*(Court of Cook County.)*

## Clingman

### vs.

## The World's Columbian Exposition Co., et. al.

(May 29, 1893.)

1. CORPORATIONS—CLOSING WORLD'S COLUMBIAN EXPOSITION ON SUNDAY—RIGHT OF STOCKHOLDER TO INTERFERE IN MANAGEMENT—BILL IN EQUITY. A mere stockholder in the World's Columbian Exposition cannot maintain a bill in equity to close the fair on Sunday as in the absence of fraud, breach of trust or *ultra vires* he has no right to interfere in the management of the corporation.

2. SAME—CONTRACT WITH CONGRESS—EFFECT OF NEW CONDITIONS. Although the directors of the World's Columbian Exposition accepted a gift from congress on condition that the fair should remain closed on Sunday, yet they have the right to rescind this contract as congress subsequently attached other conditions.

3. CONSTITUTIONAL LAW—PRACTICE OF RELIGION WITHOUT DISCRIMINATION—SUNDAY CLOSING. Article 2 of the Illinois Constitution guaranteeing the free exercise of religion prevents Sunday closing based on a religious principle.

4. SUNDAY—CLOSING FAIR ON THAT DAY—SECTION 317 OF CRIMINAL CODE—DISTURBING PEACE ON SUNDAY. It can not be assumed without a showing that the opening of the fair on Sunday will disturb "the peace and good order of society" and thus violate section 317 of the Criminal Code.

5. EQUITY—WHEN UNITED STATES NOT NECESSARY PARTY TO BILL. No property rights of the United States being involved in this controversy, it is not a necessary party to the bill.

6. EQUITY—DIVERSION OF PUBLIC PROPERTY—RIGHT OF TAXPAYER TO MAINTAIN BILL. A taxpayer has the right to maintain a bill in equity to enjoin a private corporaton from diverting public property from its dedicated use where such diversion affects his pecuniary interest as a stockholder.

7. PARKS—REGULATION OF—CLOSING ON SUNDAY—BURDEN OF PROOF—ISSUING INJUNCTION. In view of the statute declaring that Jackson Park shall be a public park free to all persons forever, the burden is on the persons claiming that a rule closing it on Sundays is reasonable, and where this is not done, a complainant is entitled on the face of his bill to a preliminary injunction restraining the closing.

Motion for preliminary injunction.   Heard before Judge Stein.   The facts are stated in the opinion.

*William E. Mason,* for complainant.

*Edwin Walker,* for defendants.

*Messrs. Gault & Street,* for intervening petitioner.

STEIN, J. :—

The bill in this case prays for an injunction against the South Park commissioners and the directors of the exposition to restrain them from closing the south park, and more particularly the fair grounds, on Sundays.   Upon a motion for a preliminary injunction based upon the bill, counsel for the respective parties and for Charles H. Howard, an intervening petitioner, presented their views and argued the questions at issue with considerable fullness.   The court has also had the benefit of the arguments of the United States district attorney and of Mr. Huntley, one of the national commissioners, both of whom were present at the hearing.

Counsel for the complainant having limited his motion to an injunction against the board of directors, it will not be necessary to pass upon the objections that have been made to the issuing of an injunction against the park commissioners.

In disposing of the motion the court can only consider the facts as set forth in the bill of complaint and the intervening petition, they being the only papers presented in support of the motion or in opposition to it.

The intervening petitioner prays for an injunction against the directors to restrain them from opening the fair on Sundays; but at the hearing his counsel stated that they did not desire an injunction, and in their argument confined themselves to the presentation of objections to the injunction prayed for in the bill of complaint.

The complainant filed his bill in a dual capacity, as a stockholder and as a tax payer.   His counsel, however, did not press his claims as a stockholder, and rested his argument principally, if not solely upon his rights as a tax payer.   It is too clear for argument that as a mere stockholder the complain-

ant cannot maintain this bill. In the absence of fraud, breach of trust or *ultra vires,* neither of which is alleged, a stockholder has no right to interfere with the management of affairs of the exposition by its board of directors.

As a tax payer the complainant claims that because under the act of the legislature of February 24, 1869, the lands and premises to be acquired by the South Park commissioners were "to be held, managed and controlled by them and their successors as a public park for the recreation, health and benefit of the public, and free to all persons forever," it was beyond the power of the park commissioners or the exposition authorities to close the park on Sundays, and that an injunction should issue on that ground alone.

To this view divers objections are made by the intervening petitioner, which will briefly be considered. In the first place it is contended that congress, having sole power and supreme jurisdiction, has enacted a law that the fair shall be closed Sundays. Even if it were true (which it is not) that congress had sole or supreme jurisdiction in the matter in hand, still, in the very first act of congress concerning the exposition and creating the board of national commissioners (approved April 25, 1890), it is provided that "nothing in this act shall be so construed as to override or interfere with the laws of any state." The laws of this state touching the use of the park were therefore expressly left in full force and effect. Nor is it true that congress has passed a law requiring the fair to be closed on Sunday. On the contrary, it has carefully refrained from doing so, probably for the reason that it knew it had no power. What it did was by the act approved August 5, 1892, to make certain appropriations, including the $2,500,-000, "upon the condition that the said exposition shall not be opened to the public on the first day of the week, commonly called Sunday; and if the said appropriations be accepted by * * * the World's Columbian Exposition upon that condition, it shall be and hereby is made the duty of the World's Columbian Exposition * * * to make such rule as * * * shall require the closing of the exposition on * * * Sunday." It was

only by the acceptance of this condition by the exposition board of directors that the clause forbidding Sunday opening became operative. In effect, congress offered them a certain sum of money, provided they would do a certain thing. They accepted the proposition, and thereby entered into a contract with congress. Had they not accepted it the Sunday clause would have been of no force or validity whatever, and would have remained what it was in the first place, a mere offer.

But as the directors did accept the condition, it is claimed that they are bound by it; and the court should not enjoin them from doing what as a matter of sound morals and common honesty they are bound to do. On the other hand, it is urged that the subsequent action of congress has relieved the directors from the obligation of the contract. On March 3, 1893, congress ordered the payment of $570,808 for awards and certain other purposes, and specifically directed that this sum "shall be a charge against the World's Columbian Exposition and that of the $2,500,000 appropriated under the act of August 5, 1892, $570,808 shall be retained by the secretary of the treasury" until the directors shall have furnished to his satisfaction full and adequate security of the repayment by the directors of the sum of $570,808 on or before October 1, 1893, "and until such security shall have been furnished this appropriation" (meaning the $570,808), or any portion thereof, shall not be available.

Having in August, 1892, donated to the fair a sum of money upon a certain condition, which was accepted, congress undertook in March following to withhold and has withheld over one-fifth of that sum unless certain security can be furnished by the directors,—a requirement about which nothing was said in August. Congress could not by itself alone change or impair the terms of the contract then entered into. As it takes two to make a contract, so it takes two to unmake it or to change it. The money withheld, over one-fifth, constitutes a substantial part of the original appropriation, and the withholding of it is such a breach of the contract as to relieve the directors from the effect of the Sunday clause, provided they

return what moneys they received before the adoption of the act last March, and have accepted no substantial sum since they learned of its passage. There is nothing before the court to show any acceptance of moneys since the passage of the act.

"This is a Christian nation," says the intervening petitioner, "and Christianity," says his counsel, "is a part of the law of the land;" and therefore the injunction should not be granted. The truth of this proposition, from a legal standpoint, is not beyond doubt, but conceding its correctness, the consequences predicated thereon do not follow. In the bill of rights, being art. 2 of the constitution of Illinois, the people of the state have declared: "The free exercise and enjoyment of religious profession and worship *without discrimination,* shall be forever guaranteed; and preference shall be given by law to any religious denomination or mode of worship." But irrespective of the constitutional provision, grave difficulties present themselves as soon as it is sought to enforce practically the doctrine that the Christian religion is a part of our law. There is a well known Christian sect, the adherents of which believe that Saturday, and not Sunday, is the proper and rightful day of rest and worship; and even among those who regard Sunday as the proper day there are serious differences of opinion as to the manner in which it should be kept. In this, as in other centuries, there are millions of professing Christians, members of churches and congregations, who see no wrong in taking recreation on Sunday. Indeed, they welcome it as a day on which, in addition to religious worship, they have time to breathe the fresh air of the parks and the country, and to listen to the sounds of song and music, and to view and admire the masterpieces of sculpture and painting. Even if Christianity be embedded in the law (which I repeat is not free from doubt), yet it by no means follows that the Christian religion, as practiced by very large numbers of its devout believers, requires the fair to be closed on Sunday.

It is next objected that for the court to grant the injunction asked for would be a violation of the law of the state because

section 317 of our criminal code provides that "whoever disturbs the peace and good order of society by labor or any amusement or diversion on Sunday shall be fined not to exceed $25." It is *assumed* by the intervening petitioner and his counsel that keeping the fair open Sundays will result in a disturbance of the peace. They make no showing and produce no proof that such will be the case, or that the disturbance, if any, will be greater on that day than on any other. As a citizen, the court, with many others, is of the opinion that under the conditions known to prevail in this community, the opening of the fair on Sundays, instead of disturbing, will directly and powerfully *conduce* to "the peace and good order," and (one may safely add) to the education and elevation of "society."

It is next urged that the United States is a necessary party to the proceeding, but if it were made a party, this court would have no jurisdiction over it. The latter may be conceded, but it does not appear that the government is a necessary or even a proper party. In the case cited by counsel, *Springer v. Rosette*, 47 Ill. 223, the bill was filed to set aside, as a cloud upon the complainant's titles, a certain deed conveying his land to the United States, which had been sold to it by reason of his default in payment of an income tax due from him under the internal revenue law. There, the property rights of the United States were directly involved; here, so far as appears, no property interests of the government are at stake.

Lastly, it is said that the complainant cannot maintain his bill because he has no more interest in the subject matter than any other citizen or tax payer, and therefore the suit should have been brought by some representative of the people, such as the attorney-general or the state's attorney. In support of this contention, counsel cites *City of Chicago v. Union Building Association*, 102 Ill. 379. That was a bill by the association, as a tax payer, and the owner of the building at the southwest corner of Washington and LaSalle streets, to enjoin the city from vacating LaSalle street between Jackson and Van Buren, in order to make room for the erection of the

present board of trade building. The supreme court held that in the absence of a special injury on its part the association could not maintain the bill, and that for any act obstructing a public and common right, no private action will lie for damages of the same kind as those sustained by the general public. It will be noticed, however, that suit was against a municipal and therefore a public corporation, and not, as here, against a private one. And even there the supreme court referring to many cases previously decided by it, announced as a well established rule that wherever the tax payer has a directed personal interest to be protected, for example, where the public authorities attempt to impose upon him an illegal or unauthorized tax, any one whose property will be affected may enjoin even a public corporation or its officers from collecting the tax. *Chestnutwood v. Hood,* 68 Ill. 132; *Devine v. Board of Commissioners of Cook Co.,* 84 Ill. 590; *City of Springfield v. Edwards,* 84 Ill. 626.

In the present bill it is averred that the complainant has contributed large sums toward the establishment and maintenance of the exposition, and that the closing of the fair on Sunday will operate prejudicially to his pecuniary interests as a stockholder. He has therefore a direct personal interest, to protect which he has filed this bill.

By the act of the legislature providing for the location and maintainence of the south park, the commissioners are to hold and manage the park grounds "subject to such rules and regulations as shall from time to time be adopted by them or their representatives for the well-ordering and regulation of the same." Under this provision, the commissioners may make such rules and regulations as are reasonable and proper to effect the purposes for which the park system was established. It is charged in the bill that the park commissioners and the exposition directors "have agreed to close the whole or a part of the said land upon the first day of each week, commonly called Sunday, and thereby to prevent the admission and recreation to the public of said lands and premises," and that neither the commissioners nor the directors had any right to

enter into any such "agreement." It does not appear that the "agreement" to close the park was entered into in pursuance of any rule or regulation made by the commissioners, or that any rule was made by them regulating the admission to the park on Sunday or any other day. Upon the showing now made, and, even regarding the "agreement" as a rule, the court is not in a position to determine whether it is a reasonable exercise of the powers conferred upon the commissioners. In view of the language of the act that the land shall be a "public park for the recreation, health and benefit of the public, and free to all persons forever," it devolves upon those who claim that the exclusion of the public on Sundays was rightful, to show the reasonableness of the action taken in that regard.

This not having been done, the complainant is entitled on the face of his bill, to a preliminary injunction as prayed for, and it is accordingly ordered to issue upon his giving the usual bond in such sum as may be fixed by the court.