THE PEOPLE *ex rel.* William T. Reed *et al.*

*v.*

PETER WEBER *et al.*

*Opinion filed June 14, 1906.*

1. ELECTIONS—*proposition must receive majority of all the votes cast at election.* Where a proposition is submitted to the voters at a general election it must receive a majority of all the votes cast at the election in order to carry, unless the statute providing for its submission specifies that a majority of the votes cast upon the particular proposition shall be sufficient.

2. SAME—*election for city organization need not be held under Australian Ballot law.* The law under which an election for city organization under the general law is held is special in its nature and was not repealed by the Australian Ballot act of 1891, and the election need not be held under the latter act.

3. MUNICIPAL CORPORATIONS—*rule as to majority in election for city organization.* If the proposition to vote upon city organization under the general law is submitted at a special election held for that purpose, a majority of the votes cast for the proposition is sufficient to carry it; but if it is submitted at a general election a majority of all votes cast at the election is essential.

APPEAL from the Circuit Court of DuPage county; the Hon. ARTHUR H. FROST, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, (CHARLES D. CLARK, of counsel,) for appellants:

Where a special proposition is submitted to a vote of the electors at a general election, before said proposition can be

declared carried it is necessary that it shall have received a majority of all the votes cast at such general election, unless otherwise specified; and the fact that such proposition might have been submitted at a special election called for that purpose only, instead of at a general election, will not change the rule. *People* v. *Brown*, 11 Ill. 479; *People* v. *Wiant*, 48 id. 263; *Chestnutwood* v. *Hood*, 68 id. 132.

Where a special proposition is to be submitted to a vote of the electors, and it is intended that the vote upon that proposition alone shall be considered in determining the result, the language used in the act providing for the submission will clearly indicate that the vote upon the proposition alone will control. *Armour Bros.* v. *Commissioners*, 41 Fed. Rep. 321; *Montgomery* v. *Trimbell*, 42 L. R. A. 738; *State* v. *Cornell*, 74 N. W. Rep. 59; *Howland* v. *Board*, 41 Pac. Rep. 864; *State* v. *McGowan*, 39 S. W. Rep. 771; *Stebbins* v. *Judge*, 108 Mich. 693; *In re Denny*, 51 L. R. A. 722; *State* v. *Foraker*, 47 Ohio St. 422; Const. art. 10, sec. 2.

A special proposition submitted to a vote of the electors does not constitute a special election, where the same is submitted in connection with a general election. *Chestnutwood* v. *Hood*, 68 Ill. 132; *People* v. *Wiant*, 48 id. 263; *State* v. *Foraker*, 47 Ohio St. 422; *In re Denny*, 51 L. R. A. 722; *Bryan* v. *Stephenson*, 35 id. 752.

The proposition in favor of city organization failed to carry, for the reason that the same appeared upon the same ballot with the names of persons to be voted for the offices of president and trustees, instead of upon a separate ballot, as required by the statute. *County of Union* v. *Ussery*, 147 Ill. 204; Rev. Stat. chap. 46, sec. 303.

KNIGHT & BROWN, (GEORGE G. KING, of counsel,) for appellees:

In the absence of an express provision to the contrary, the will of all the voters is taken as expressed by the voters who vote. *Cass County* v. *Johnston*, 95 U. S. 360; *Green*

v. *Board of Canvassers,* 95 Am. St. Rep. 169; *South Bend*
v. *Lewis,* 138 Ind. 512.

Where a measure is proposed to the people and its adop-
tion is made to depend upon a majority of the votes cast,
and where there is no limitation requiring the taking of the
vote at a general election, those who do not vote upon the
proposition are regarded as acquiescing in the result de-
clared by those who do vote, regardless of the votes cast at
the same time upon other questions. *State* v. *Grace,* 20 Ore.
154; *State* v. *Echols,* 20 Pac. Rep. 523; *Gillespie* v. *Palmer,*
20 Wis. 544; *Walker* v. *Oswald,* 68 Md. 146; 138 Ind. 512.

The Australian Ballot act is not amendatory of the City
and Village act. *People* v. *Marquiss,* 192 Ill. 377.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an information filed by the State's attorney of
DuPage county, by leave of court, in the circuit court of said
county, upon the relation of William T. Reed, William J.
Carr, Matthew J. Leonard and Nick Tennes, against Peter
Weber, Anton Deutsch and Joseph Lehman, to require the
respondents to show by what warrant and authority they
held and executed the offices of trustees of the village of
West Chicago. To the information the respondents filed a
plea, in which they averred that at the annual election held
in said village on April 21, 1903, they were duly elected vil-
lage trustees of said village for the term of two years and
until their successors were elected and qualified; that they
duly qualified as such trustees and accepted such offices and
entered upon the performance of the duties of said offices,
and were in law and in fact trustees of said village on the
21st day of April, 1905, the day upon which was held the
regular annual municipal election of said village; that at
said election there was, pursuant to law, submitted to a vote
of the electors of said village the question as to whether the
village of West Chicago should become organized as a city
under the general act relative to cities and villages, passed

April 10, 1872; that at said election said proposition of becoming organized as a city was submitted to the electors upon the ballots cast at such election, together with the names of the various candidates to be voted for, the proposition appearing on said ballots as follows: "For city organization under general law;" "Against city organization under general law;" that thereafter, at a meeting of the board of trustees of said village, on April 28, 1905, the ballots cast at said election were duly canvassed by the board of trustees, and it was found that at said election one hundred and sixty-three votes were cast for city organization and ninety-six votes were cast against said proposition, and it was thereupon ordered that the result of said election be canvassed and entered upon the records of the village, and that the same was done, and the village clerk was directed to file, and did file in the office of the recorder of deeds of said DuPage county, a certified copy of the record in the matter of such organization, and showing the canvass of the vote and the result thereof, and that they were then exercising the rights and performing the duties, as trustees of said village, required by section 3 of article 1 of chapter 24 of the Revised Statutes of the State of Illinois, and that they expected to continue so to do until city officers should be elected for the city of West Chicago. The State's attorney filed a replication to said plea, alleging the proposition for city organization under general law was not carried at said election, for the reason that the one hundred and sixty-three votes cast in favor of the proposition were not a majority of all the votes cast at such election; that it appeared from the poll-books of the election, and the canvass thereof, that four hundred and fifty-nine ballots were cast by the voters of the village at such election, and that only one hundred and sixty-three of said votes were for city organization under general law. It was also averred that the proposition for city organization under general law had not carried, for the reason that said proposition was submitted to the voters upon the

same ballots with the list of candidates for the offices voted for at said election, and not upon separate ballots, as required by law. The respondents filed a demurrer to said replication, which was sustained by the court, and the State's attorney having elected to stand by his replication, a judgment was rendered in favor of the respondents, and an appeal has been prosecuted to this court.

The proposition for city organization under general law was submitted to the voters of the village of West Chicago at the general municipal election held in said village on April 21, 1905, at which general election there were cast four hundred and fifty-nine votes for village officers. There were, however, cast at said election, upon the proposition for city organization under general law, only two hundred and fifty-nine votes, one hundred and sixty-three votes being for organization under general law and ninety-six votes being against said proposition. The question, therefore, here presented for decision is, in order to carry the proposition for city organization under general law, when the proposition is submitted at a general election, is it necessary that the proposition receive a majority of all the votes cast at such election, or is it sufficient if the proposition for city organization under general law receive a majority of all the votes cast upon that proposition? A determination of that question involves the construction of sections 1 and 3 of article 1 of the general act for the incorporation of cities and villages, (Hurd's Stat. 1903, p. 282,) which sections read as follows:

"Section 1. That any city now existing in this State may become incorporated under this act in the manner following: Whenever one-eighth of the legal voters of such city voting at the last preceding municipal election shall petition the mayor and council thereof to submit the question as to whether such city shall become incorporated under this act to a vote of the electors in such city, it shall be the duty of such mayor and council to submit such question to a vote of the electors of said city at the next ensuing municipal

election of said city or at a special election to be designated by them, and to give the notice required by law.

"Sec. 3. The ballots to be used at such election shall be in the following form: 'For city organization under general law;' or, 'Against city organization under general law.' The judges of such election shall make returns thereof to the city council, whose duty it shall be to canvass such returns and cause the result of such canvass to be entered on the records of such city. If a majority of the votes cast at such election shall be for city organization under general law, such city shall thenceforth be deemed to be organized under this act; and the city officers then in office shall, thereupon, exercise the powers conferred upon like officers in this act, until their successors shall be elected and qualified."

It will be observed that said section 3 provides, "if a majority of the votes cast at such election shall be for city organization under general law, such city shall thenceforth be deemed to be organized," and the question here involved is in reality narrowed to the meaning of the words "such election," as found in that clause of section 3 of the statute. To determine the meaning of these words, reference must be had to section 1 of the act, which provides that the mayor and city council may designate the election at which the proposition for city organization under general law may be submitted. The language of the section is, the question may be submitted "at the next ensuing municipal election of said city or at a special election," the determination of which is left to the mayor and city council. It would seem clear that the words "such election," used in section 3, refer to the election at which the mayor or city council shall determine to submit the proposition for city organization under general law, whether it be at a general or at a special election. If it be determined by them to submit the proposition for city organization under general law at a special election, then the proposition would be carried if the proposition received a majority of the votes cast upon the proposition, as

a majority of the votes cast upon the proposition would be a majority of the votes cast at such election. On the other hand, if the proposition be submitted at "the next municipal election," a majority of the votes cast upon the proposition for city organization under general law might not, as was the case here, be a majority of all the votes cast at the election and be sufficient to adopt the proposition, as the votes cast for the proposition would not be a majority of the votes cast at such election. Our conclusion therefore is, that the proposition for city organization under general law submitted to the voters of the village of West Chicago on September 21, 1905, did not carry, as there were four hundred and fifty-nine votes cast at that election and the proposition received only one hundred and sixty-three votes, which was less than a majority of the votes cast at such election.

It is urged by appellees that when the act of 1872 was passed, section 1 provided that the proposition for city organization under general law should be submitted at a special election, and it is said the words "such election," found in said section 3, then referred to a special election, and at that time a majority of the votes cast upon the proposition for city organization under general law would have been suffi-. cient to carry the proposition, and as those words have not been changed since the adoption of the original act they must now be given their original meaning, and it be held that a majority vote upon the proposition is sufficient to carry said proposition, although such vote does not amount to a majority of the votes cast at the election at which the proposition was submitted. Subsequent to the passage of the act of 1872 section 1 was amended so that the proposition for city organization under general law was required to be submitted at the "next ensuing municipal election." Clearly, then, the words "such election" referred to a majority of the votes cast at such municipal election, and during the period that amendment was in force the proposition for city organization under general law required a majority of all the votes cast

at the election before such organization could be effected. Afterwards, section 1 of the statute was amended so that it read as it now appears upon the statute books, and authorized the mayor and city council to submit the proposition for city organization under general law at a general or special election. When the last amendment was made to section 1 of said act we think such change was wrought, by implication, in section 3 of the act as brought that section into harmony with section 1 as amended, and that in construing section 3 at the present time we must consider section 1 as we now find it upon the statute books, and not as it was originally passed.

It is also insisted that more votes ought not to be required at a general than at a special election to adopt city organization under general law. Such result does not necessarily follow, as in many instances the opposite might be the result, —that is, a special election might excite more interest and bring out a larger vote upon the proposition for city organization under general law than though such proposition was submitted at a general election. The question, however, whether the proposition should be submitted at a special or general election and the number of votes required to adopt the proposition for city organization is legislative and one with which the courts cannot deal, the only province of the courts being to construe the statute as passed. To us it is clear that the legislature provided the proposition for city organization under general law might be submitted to the voters at a special or general election, and further provided that at any such election, whether such election be general or special, the proposition must receive a majority of the votes cast at any such election before such proposition should be held to be carried, and we think had it been the legislative intention that in case the proposition was submitted at a general election a majority of the votes cast upon the proposition should be sufficient to adopt city organization under general law, they would have so said in express terms.

In *People* v. *Wiant,* 48 Ill. 263, an election upon the question of the removal of a county seat was held at the same time that there was elected a circuit judge, and it was held that it was not the votes which were cast upon the proposition of removal that was to govern, but that it must appear that a majority of all the votes cast at the election were in favor of removal.

The case of *Chestnutwood* v. *Hood,* 68 Ill. 132, involved the validity of bonds voted in aid of the construction of a railroad.  An act of the legislature authorizing the voting of railroad aid provided the election might be held at a special or general election, but that no bonds should be issued unless a majority of the legal voters of the municipality seeking to issue the same should vote for the issue thereof. At the general election at which the proposition was submitted thirty-two hundred and ten votes were cast.  Twelve hundred and seventy-eight were cast for and twelve hundred and seventy-five against the proposition to issue bonds.  A bill was filed to enjoin the issue of the bonds, and it was contended a majority of the votes upon the proposition was all that was necessary to authorize the issue of the bonds, regardless of the total vote cast at the election.  It was, however, held, in accordance with the decision in *People* v. *Wiant, supra,* that the bonds could not be issued unless a majority of all the votes cast at the election were in favor of issuing said bonds.  The authorities are not in entire harmony upon the question, but we think the rule in this State is settled by the foregoing cases and other kindred cases, that when a proposition is submitted to the voters at a general election it must receive a majority of all the votes cast at the election before it can be held to be carried, unless the statute providing for its submission provides that a majority of the votes cast upon the particular proposition submitted shall be sufficient to adopt it.  *People* v. *Brown,* 11 Ill. 478; *People* v. *Garner,* 47 id. 246; *People* v. *Wiant, supra; Chestnutwood* v. *Hood, supra.*

The contention that the election should have been held under the Australian Ballot law we think without force. The law under which an election for city organization under general law is held is special in its nature, and was not repealed by the Ballot law of 1891. *People* v. *Marquiss,* 192 Ill. 377.

The judgment of the circuit court will be reversed and the cause remanded to that court with directions to overrule the demurrer to said replication, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*