116    APPELLATE COURTS OF ILLINOIS.

Hysler v. Bd. of Edu. of Springfield S. D. No. 186, 201 Ill. App. 116.

## Herman Hysler, Appellant, v. Board of Education of Springfield School District No. 186 et al., Appellees.

1. SCHOOLS AND SCHOOL DISTRICTS, § 66*—*when propositions to purchase site and erect building not carried by majority vote.* Where at a general election propositions to purchase a school site, to build a new school building, and to issue bonds for such purposes, were submitted along with other propositions, and the votes in favor of none of the school propositions amounted to a majority of the total number of votes cast at such election, *held* that the school propositions were lost and no authority was conferred on the Board of Education to act thereunder, although such propositions were submitted on a separate ballot from those on which the other propositions were submitted.

2. SCHOOLS AND SCHOOL DISTRICTS, § 65*—*when a board of education may be enjoined from using funds of district.* A board of education may be enjoined from using the funds of the school district for buying schoolhouse sites or building schoolhouses thereon when they have not been authorized to do so by a vote of the people.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded with directions. Opinion filed October 13, 1915.

B. L. CATRON, for appellant.

M. U. WOODRUFF and WILSON, WARREN & CHILD, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Herman Hysler, a resident and taxpayer in Springfield School District No. 186, filed a bill in chancery against Springfield School District No. 186, and the Board of Education and officers of said School District, praying an injunction restraining the said Board of Education from expending the funds of said district for the purchase of a certain new schoolhouse site, and from building a schoolhouse thereon. The defend-

*See **Illinois Notes Digest, Vols. XI to XV,** and **Cumulative Quarterly,** same topic and section number.

ants answered the bill and upon a hearing the Circuit Court denied the injunction and dismissed the bill for want of equity. The complainant prosecutes this appeal.

There is no controversy over the facts alleged in the bill. The City of Springfield and Capitol Township comprise the same territory. Springfield School District No. 186 includes all the territory within the City of Springfield and certain other territory adjacent to the City of Springfield. The district has, by the last Federal census, more than 35,000 inhabitants and less than 100,000. It exists by virtue of a special charter, is governed by a board of education consisting of seven members elected and qualified, and is vested with the powers and duties provided by the general school laws of the State for such boards of education. Schools are maintained in many school buildings, one of which is maintained and conducted on a site known as Douglas site. In February 1914, the Board of Education, by resolution, declared the Douglas site to be unsuitable and unfit for a school site.

On March 2, 1914, a petition, signed by more than 500 legal voters of the district, was filed in the office of the Board of Education asking the board to call an election for the purpose of submitting to the voters, two propositions: (1) To acquire by purchase as a school site for the Douglas school certain premises about 1,600 feet from the present Douglas school building, and (2) to build a schoolhouse on said new site. This petition was referred to a committee. At a meeting of the board on March 16th, majority and minority reports were filed by members of the committee. The majority report recommended that an election be called on April 7, 1914, submitting to the voters said proposition with the further proposition of issuing bonds to the amount of $100,000 for such purposes; the minority report recommended that the petition be

denied. On a vote the resolution recommended by the minority report was defeated. A resolution was then adopted that when the board adjourned, it adjourn to March 20th, at 5 o'clock. It was then moved and carried that consideration of the resolution to adopt the majority report be postponed to the meeting of March 20th.

On March 20th, another petition signed by more than 500 voters was filed with the Board of Education requesting that an election be called to vote on the proposition to build a new schoolhouse on the present site of the Douglas school. At the adjourned meeting of the board held on March 20th, the report of the majority of the committee presented on March 16th was adopted and the attorney of the board instructed to present to it at its next meeting a resolution for the submissions of the questions to the people. At the same meeting a resolution was adopted ''that it be the sense of the board that the prayer of the petition known as the Patterson petition (the petition filed March 20), be granted and that the attorney of the board'' present to it at its next meeting a resolution for the submission of such questions to the people.

At a meeting of the board on March 21st, a resolution was adopted ordering the names of the candidates for members of the board to be certified to the Board of Election Commissioners of the City of Springfield to be placed on the ballots to be voted at the election in the district on April 7th, which was the day fixed by the statute for such election, and a resolution recommending the submission to the voters of the question of building a new schoolhouse on the present Douglas school site was declared lost.

On April 7th, the regular election in the Springfield School District for members of the Board of Education was held and also the election on the propositions to purchase the new proposed site, build the new school on the proposed new site and issue $100,000 of bonds

for such purposes. There was also held at the same time in the City of Springfield an election on the local option question. The election in the City of Springfield was conducted by the Board of Election Commissioners. In the territory in the Springfield School District without the City of Springfield the election was conducted by the Board of Education.

The poll books used at the election were introduced in evidence and show that in the said school district 22,901 voters went to the polls and voted. Each voter in that part of the territory within the City of Springfield on going to the polls was given a ballot containing the candidates for members of the Board of Education, a ballot containing the propositions for and against said proposed new school site, the erection of a new schoolhouse, and the issuing of bonds, and a ballot containing the names of candidates for township officers and the local option proposition. There was no ballot concerning the building of a new schoolhouse on the site of the old Douglas school building.

There were 9,152 votes cast in the district for purchasing the new site, and 7,267 votes against purchasing the new site. There were 8,860 votes cast for building a new schoolhouse and 6,865 votes against building a new schoolhouse, and there were 8,759 votes cast in favor of issuing bonds as proposed, and 7,296 votes cast against issuing bonds.

Every voter in the City of Springfield who went to the polls and voted on any of the questions submitted, or for members of the board, or for township officers, or on the local option question was given ballots on all the questions and had the right to vote on all such matters. In the territory in the district outside the city every voter was given ballots on the propositions and other ballots containing candidates for members of the Board of Education. Out of 22,901 voters who went to the polls, only 16,419 voted on the proposition

to buy the proposed new school site, 17,625 voted on the proposition to build a new schoolhouse and 16,055 voted on the proposition to issue bonds.

It is conceded that the Board of Education of the Springfield School District, while it is created by a special charter, yet it is governed by and is subject to the general school law applicable to such boards of education with respect to acquiring schoolhouse sites, building schoolhouses and issuing bonds.

Section 119 of chapter 122 of the Revised Statutes (J. & A. ¶ 10140) provides: "It shall not be lawful for a board of directors to purchase or locate a schoolhouse site, or to purchase, build or move a schoolhouse, or to levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted as required by section 198 of this act. A majority of the votes cast shall be necessary to authorize the directors to act. If no locality shall receive a majority of the votes, the directors may select a suitable site. The site selected by either method shall be the school site for such district." .

Paragraph 5 of section 127 of the School Law (J. & A. ¶ 10148) governs boards of education in districts of over 1,000 and less than 100,000 inhabitants. This paragraph contains the same provisions as section 119 concerning the powers, limitations and duties of boards of education in regard to buying sites for schoolhouses and building schoolhouses.     .

It has been held that "where a proposition is submitted to the voters at a general election it must receive a majority of all the votes cast at the election in order to carry, unless the statute providing for its submission specifies that *a majority of the votes cast upon the particular proposition shall be sufficient.*" *People v. Weber,* 222 Ill. 180; *Chestnutwood v. Hood,* 68 Ill. 132; *People v. Wiant,* 48 Ill. 263; *People v. Brown,* 11 Ill. 479. In the *Weber* case, *supra,* the vote was regarding the question of whether the Village of

West Chicago should become a city organized under the general city and village act. The statute provides that such an election may be held either at a general or at a special election. The election was called at a general election. To effect such a change the statute requires a majority of the votes cast at such election to be for organization under the general law. There were cast at the general election 458 votes for village officers. There were cast 163 votes for organization under the general law and 96 against. It was held that the proposition to organize under the general law did not carry.

In this case the fact that the school propositions, the names of the candidates for members of the Board of Education, and township officers with the local option question were on separate ballots cannot reduce the number of votes that must be cast in favor of the school propositions in order that they might be adopted, while the vote on the school proposition being held at the same time with the other propositions might increase the number of votes necessary for their adoption, just as occurred in the West Chicago case.

Since 22,901 voters went to the polls, 11,451 votes in favor of any proposition were necessary to carry such proposition. The largest number of votes cast in favor of any of the propositions was 9,152 in favor of purchasing the new site. It is not contended either that the question of voting upon the purchase of any other site was submitted to the voters for their approval, or that any votes were cast in favor of or against the purchase of any other site, or for or against building on any other site, and from the canvass and returns of the votes cast, over 5,000 voters appear not to have voted on the school propositions. The propositions to purchase the proposed new school site and build a new schoolhouse thereon failed to re-

ceive a majority of the votes cast at such election and were not authorized by the voters.

Boards of education may be enjoined from using the funds of the district for buying schoolhouse sites or building schoolhouses thereon when they have not been authorized to do so by a vote of the people. *Kiehna v. Mansker,* 178 Ill. 15; *School Directors v. People,* 90 Ill. App. 670.

A majority of the votes cast at the election on April 7th, not being in favor of the propositions, we do not deem it necessary to pass upon other questions presented and argued, as there have been changes in the statute law since the election in controversy was held, and the question reviewed is decisive of this cause.

The decree of the Circuit Court is reversed and the cause remanded with directions to the trial court to grant an injunction enjoining said Board of Education and its officers from expending the funds of said district in purchasing said proposed site and in building a schoolhouse thereon under the election held April 7, 1914.

*Reversed and remanded with directions.*