THE PEOPLE *ex rel.* George W. Lyerly, County Collector, Appellee, *vs.* THE MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

*Opinion filed December 21, 1927—Rehearing denied Feb. 20, 1928.*

1. CONSTRUCTION—*constitution or statute should be given practical construction.* The constitution or a statute should be given that construction which will avoid impracticable or absurd results.

2. TAXES—*when provision of section 27 of Counties act authorizing additional tax by majority of votes "upon the question" does not apply.* To authorize a county tax in addition to the constitutional limit, under section 8 of article 9 of the constitution the vote on the proposition must receive the sanction of a majority of all voters voting at the election at which such proposition is submitted, and the provision of section 27 of the Counties act authorizing an additional tax when a majority of those voting "upon the question" are in favor of the tax does not apply.

APPEAL from the County Court of Union county; the Hon. ERNEST S. ALDEN, Judge, presiding.

JOSIAH WHITNEL, and H. L. BROWNING, (EDWARD J. WHITE, and CHARLES C. CRAWFORD, of counsel,) for appellant.

R. WALLACE KARRAKER, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellant objected to a part of the county tax levied against its property in Union county for the year 1926, the same being seventeen cents on each $100 valuation levied and extended for the purpose of erecting a new county jail. The objection was overruled and judgment for sale was entered on application of the county treasurer therefor, and appellant has brought the record here for review.

It appears that the county clerk of Union county extended a rate of fifty cents per $100 assessed valuation for general county purposes, twenty-five cents for county highway tax and seventeen cents for the county jail tax in question here, making a total of ninety-two cents per $100 valuation. Appellant objected to the item of seventeen cents on the ground that it was in excess of the rate permitted by the constitution and was not authorized by a vote of the people of the county.

The record shows that at the meeting of the board of county commissioners held in September, 1926, a resolution was adopted setting out that the sum of $12,000 would be required for the purpose of constructing a county jail; that said sum was in addition to the rate of fifty cents per $100 valuation levied for county purposes and the rate of twenty-five cents per $100 valuation for maintenance of State aid roads, and it was ordered that the proposition for the levy of an additional tax of seventeen cents on each $100 valuation be submitted to a vote of the people. Thereafter, at the regular election on November 2, 1926, the proposition was so submitted. The total vote cast at that election was 4491, of which 1824 votes were cast "For additional tax" and 1242 votes were cast "Against additional tax," 1425 electors voting at that election having voted neither for nor against the proposition for increased tax. The board thereafter directed the extension of an additional tax of seventeen cents for the year 1926.

Appellant contends that under section 8 of article 9 of the State constitution, which provides that no county shall assess taxes, the aggregate of which shall exceed seventy-five cents per $100 assessed valuation, unless authorized by a vote of the people of the county, it is necessary, in order to authorize such additional tax, that the proposition shall receive a majority of all votes cast at the election. It is evident from the proceedings taken here that the election was

held and the result declared under section 27 of the Counties act. That act as it read in 1926 provided, in part, that "whenever the county board shall deem it necessary to assess taxes the aggregate of which shall exceed the rate of fifty cents per $100 valuation of the property of the county, except when such excess is to be used for the payment of indebtedness and for the improving and maintaining of State aid roads as provided in section 25 of this act, the county board may, by an order entered of record, set forth substantially the amount of such excess required, the purpose for which the same will be required, and the number of years such excess will be required to be levied, * * * and provide for the submission of the question of assessing the additional rate required to a vote of the people of the county at the next election for county officers or at any judicial election held in such county after the adoption of the resolution." (Smith's Stat. 1925, p. 735.) The section also directs that the ballots shall be so prepared that the voter may vote "For additional tax" or "Against additional tax." It also provides: "The votes shall be canvassed and returned the same as those for county officers, and if a majority of the votes cast upon the question are 'For additional tax,' then the county board shall have the power to cause such additional tax to be levied and collected in accordance with the terms of such resolution," etc. This section does not by its terms apply to an election to authorize taxes in excess of the constitutional limitation, nor is the manner of calling and conducting such an election provided either by the constitution or by statute. Such an election must therefore be called and conducted in a manner consistent with the laws relating to the calling and conducting of elections on similar questions, so that the voter will be advised that the tax on which he is to vote is in excess of the constitutional limit. *People* v. *Cairo and Thebes Railroad Co.* 319 Ill. 118.

Appellant does not contend that section 27 does not provide an appropriate means of calling the election, providing the ballots and receiving the vote, but it is contended that the provision authorizing the tax on the assent of the majority of votes cast on the proposition is invalid, as extending the power granted under section 8 of article 9 of the constitution. The principal question in the case arises on the construction of the language of the constitution, "unless authorized by a vote of the people of the county." It seems to be conceded that the words "authorized by a vote" mean by a majority vote, whether it be the vote on the proposition or the entire vote cast at the election, and the question therefore arises as to what constitutes "a vote of the people of the county" as that language is used in the constitution. This question has not been previously before this court.

In *People* v. *Brown,* 11 Ill. 478, an election had been held in Woodford county to determine whether that county should adopt the Township Organization law. The sixth section of article 7 of the constitution of 1848 provided that counties were authorized to so organize "whenever a majority of the voters of such county, at any general election, shall so determine," etc. The Township Organization law of 1849 provided by its fourth section that if it appeared by the returns of the election that "a majority of all the votes cast for or against township organization is for township organization, the county so voting in favor of its adoption shall be governed by and subject to the provisions of this act," etc. It appears that at the election at which this proposition was submitted, 153 votes were cast for and 107 against township organization while more than 600 votes were cast in the county. It was there held that the language "a majority of the voters of such county" should be construed to mean "a majority of all the legal voters of the county," and that the legislature did not pos-

sess power or authority to provide any other mode for the establishment of township organization, and that therefore the proposition to adopt township organization had not carried in that county.

In *People* v. *Warfield,* 20 Ill. 160, the case arose over an election for the re-location of the county seat of Saline county. The constitution of 1848 required that to re-locate a county seat a majority of the voters of the county shall vote for the change. The act of the legislature under which the election was held, permitted such change by the assent of a majority of the votes cast on the question of re-location. It was there held that in the language of the constitution requiring the assent of a majority of the voters of the county the words "voters of the county" should be given a practical construction, and that, in order to avoid endless inquiry, election contests and uncertainty, they should be construed to mean the majority of the legal votes cast at the election, and that since in that case the votes cast for the removal of the county seat were a majority of the votes cast on the proposition, only, and not a majority of those cast at the election, the re-location of the county seat had not been authorized, notwithstanding the provisions of the act under which the election was held.

In *People* v. *Garner,* 47 Ill. 246, which arose over an election on the adoption of township organization, it was held that the votes polled at the election are to be taken as evidence of the number of voters of the county. It was there, however, said, that such votes constitute *prima facie* evidence of the number of legal voters of the county, and raise a presumption, to be acted upon until rebutted, that the entire vote at the election is in fact the vote of the people of the county.

In *People* v. *Wiant,* 48 Ill. 263, (a case which arose over a vote to change the county seat,) it was held that under the constitution of 1848 the proposition, to be adopted, must receive a majority of the entire votes cast at the elec-

tion. It was also held that the words "vote of the people of the county," as used in the constitution, should be construed to mean the vote cast at the election. In that opinion the reasoning of *People* v. *Warfield, supra,* that such construction should be given to the language of the constitution in order to give it a practical effect and avoid interminable inquiry, with embarrassing results, was re-adopted.

In *Chestnutwood* v. *Hood,* 68 Ill. 132, this court considered an act amending the charter of the Cairo and St. Louis Railroad Company and authorizing towns, cities and counties to subscribe and take stock in that company when "a majority of the legal voters of said town, city, county or township shall vote for the same," and also providing that "a majority of legal voters at any such election shall be held as a majority of the legal voters of any such township, town, city or county." It was contended that a fair construction of the words "majority of legal voters" was a majority of the voters voting on the question submitted. It was there held, however, that the language of the legislature was plain and that such construction could not be adopted. It was also there pointed out that it is a well settled rule of construction that statutes extending the powers of corporations or increasing the burdens of taxation must be strictly construed. It will be noted that the *Chestnutwood case* involved the construction of an act of the legislature and not the language or limitation of the constitution.

The language of section 8 of article 9 of the present constitution involved here, is, in effect, the same as the language of the constitution of 1848 involved in the cases above mentioned. We are of the opinion that the construction of the words "vote of the people of the county," adopted by this court in *People* v. *Warfield, supra,* is the correct construction. The constitution or a statute should be given that construction which will avoid impracticable or absurd results. If it were to be held that the "vote of

the people of the county" meant the vote of all the legal voters of the county, regardless of whether they voted at the election in question or not, such construction would lead to a condition of uncertainty, interminable inquiry and produce endless contests, thereby destroying all practical benefit of laws passed under the provisions of the constitution. This would likewise be true if it be held that the entire vote cast at the election is but *prima facie* evidence, giving rise to a rebuttable presumption that such vote was the vote of the entire legal voters of the county. We are of the opinion that the practical construction of the language "vote of the people of the county" is that such vote shall be determined by the entire vote cast at the election, and a majority of the legal votes cast at such election is therefore sufficient to meet the requirements of the constitution.

Counsel for appellee cites *People* v. *Weber,* 222 Ill. 180, as authority for his contention that the validity of such a provision in a legislative act has been recognized. In that case the question arose over an election in the village of West Chicago at which was submitted the question whether that village should become organized as a city under the general act relative to cities and villages. Section 3 of the act under which the proposition was submitted provided that if a majority of the votes cast at such election be for city organization under the general law such city should thenceforth be deemed to be so organized. The majority of the votes cast on the proposition submitted was favorable to it, but it did not receive a majority of the votes cast at the election. It was there held that the vote was not sufficient; that if the legislature had intended that the majority referred to should be a majority of the votes cast on the proposition it would have said so in express terms. In that opinion this court used the following language: "We think the rule in this State is settled by the foregoing cases and other kindred cases, that when a propo-

sition is submitted to the voters at a general election it must receive a majority of all the votes cast at the election before it can be held to be carried, unless the statute providing for its submission provides that a majority of the votes cast upon the particular proposition submitted shall be sufficient to adopt it."

Counsel for appellee argues that the above language is a recognition of the power of the legislature to provide that a majority of the votes cast on this proposition to levy an additional tax is sufficient. That language is not to be so construed. That case did not involve any constitutional limitation, as does this case. Even though it be said that no objection could be seen to such a provision concerning elections where no constitutional limitation is involved, such would not constitute an argument for the sufficiency of the vote here involved. The clear language of the constitution is, that before an additional tax above the constitutional limitation may be levied the same must be authorized by a vote of the people of the county. In order to authorize a tax such as is involved here, the vote on the proposition must receive the sanction of a majority of all voters voting at the election at which such proposition is submitted.

It follows, therefore, that the provision of section 27 of the Counties act, "if a majority of the votes cast upon the question are 'For additional tax,' then the county board shall have the power to cause such additional tax to be levied," has no application to such an election as is here considered.

The judgment of the county court is reversed and the cause remanded, with directions to sustain appellant's objection.

*Reversed and remanded, with directions.*