(No. 18766.—Reversed and remanded.)
ALMA M. CAMPE, Appellant, vs. ANTON J. CERMAK et al.
Appellees.

*Opinion filed April 21, 1928—Rehearing denied June 14, 1928.*

1. STATUTES—*courts cannot insert provision in title of act to make it valid.* While every reasonable presumption will be indulged in favor of the validity of an act, giving to the general words in the title paramount weight, courts are not privileged to import into the title a condition or qualification not found there.

2. SAME—*general rule as to when title of act expresses single subject.* Section 13 of article 4 of the constitution is intended to prevent the passage of an act embracing more than one subject, which must be expressed in the title, but in determining the question the body of the act must be looked to to determine whether but one purpose is included, and if all the provisions of the act are fairly referable to one general scheme or purpose and that one purpose is expressed in the title the act is valid.

3. SAME—*effect where act embraces two subjects.* Where an act embraces two subjects but one of which is expressed in the title, only that part of the act not so expressed is invalid, but where two subjects are embraced both in the act and in the title the entire act is void.

4. SAME—*when matters are "germane" to a single subject.* To be germane to a single subject the matters included in the title to an act must be "akin" or "closely allied," and two things resembling one another are not necessarily, in a legal sense, germane.

5. CONSTITUTIONAL LAW—*act of 1927 authorizing counties to establish municipal halls is invalid.* The title of the act of June 1, 1927, authorizing counties to establish municipal halls, also expresses the further subject of authorizing counties and cities to agree concerning the location, operation and maintenance of such halls, and as the body of the act attempts to carry out both subjects the act is invalid *in toto,* as it is impossible to preserve one subject while the other falls.

6. SAME—*act of 1927 authorizing counties to establish municipal halls does not provide sufficient notice of election.* The election to authorize bonds in addition to the constitutional limit for the purpose of establishing municipal halls, as provided in the act of June 1, 1927, is a special election notwithstanding it is held on the day of a general election; and the provision of the act authorizing the vote to be taken "at the June, 1927, election without further

notice" is invalid, as the constitutional provision for submitting an additional tax to a vote of the people contemplates that the people have reasonable notice that such proposition is to be submitted.

7. SAME—*what vote necessary to authorize tax in addition to constitutional limit.* To procure a vote of the people of a county for an increase of taxes above the constitutional limit there must be reasonable notice to the voters of the submission of the proposition and a vote in favor of that proposition by a majority of the voters voting at the election.

8. NOTICE—*what is constructive and what is actual notice.* Notice is constructive when by circumstances a party is put upon inquiry and must be presumed to have had notice or by judgment of law is held to have had notice, but actual notice does not exist unless it is directly and personally given to the party to be notified.

APPEAL from the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

FRANK O. CAMPE, and WINTERS, STEVENS, RISK & GRIFFITH, (GEORGE M. STEVENS, and MELVIN L. GRIFFITH, of counsel,) for appellant.

HAYDEN N. BELL, EDMOND L. MULCAHY, GEORGE F. CAROLAN, and TAYLOR, MILLER, BUSCH & BOYDEN, (FRANCIS X. BUSCH, and JOHN S. MILLER, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed a bill in the circuit court of Cook county to restrain the board of county commissioners and the county clerk of that county from issuing or selling bonds of the county in the sum of $15,000,000 for the purpose of acquiring a site for and to pay the cost of erection of a municipal hall and levying a tax in excess of the constitutional limit to pay for the bonds. The bill is based on the claim of appellant that the act of the General Assembly under which the election authorizing the issuance of the bonds was held is unconstitutional. The bill sets out that the act was passed by the General Assembly on June 1, 1927, with

an emergency clause and was signed by the Governor on that day; that among other provisions the act required that the proposition of issuing bonds for the establishment of such municipal hall, and the additional tax therefor, be submitted "at the June, 1927, election without further notice." On June 2, 1927, the day after the act went into effect, the board of commissioners of Cook county passed a resolution calling the election on June 6, 1927, and directed that there be submitted to a vote of the people on that date the question of the issuance of bonds in the sum of $15,000,000, and that the questions of levying taxes in addition to the statutory limit of fifty cents (now twenty-five cents) on the $100 valuation, and in addition to the constitutional limitation of seventy-five cents on the $100 limitation, be also then submitted. The bill further alleges that at the election so called and held 146,510 electors voted in favor of the propositions and 91,815 electors voted in opposition thereto; that thereafter the board of commissioners of Cook county by resolution ordered that municipal hall bonds in the sum of $15,000,000 be issued and that a tax be levied for the purpose of paying the principal and interest on the bonds; that the questions were submitted to the vote of the people at the election on June 6, 1927, without any other notice than that contained in the act of June 1, 1927, and that the submission of said questions in such manner was wholly unreasonable and void; that the act of June 1, 1927, authorizing such procedure was unconstitutional and the levy of a tax in excess of the constitutional limitation was in violation of section 2 of article 2 of the constitution, providing due process of law. Other grounds of the invalidity of the act were also alleged. An answer was filed to the bill, and on a hearing the bill was dismissed for want of equity.

The title of the act in question is as follows: "An act to enable counties to establish and maintain a municipal hall and to operate the same and to control or regulate the use

330—30

thereof. And to enable any county and any municipality within such county to arrange, upon such terms and conditions as they may agree upon, for the establishment, maintenance and operation of a municipal hall upon any land owned or controlled within such county by such municipality." (Cahill's Stat. 1927, p. 749.) Section 1 of the act provides that any county in the State having a population of 500,000 or over shall have power to acquire land for a site for a municipal hall and to erect such hall from funds realized from the sale of the bonds of the county, subject to a vote on the proposition of the issuance of such bonds as in the act provided. By this section counties are given power, in case such issuance of bonds is voted, to maintain, operate, control and regulate the use of such municipal hall from the general funds of the county after first applying to the expense of such maintenance, operation and control any income arising from such hall. The second section provides: "Whenever in any county the county board shall pass a resolution providing for a referendum vote upon the question of issuing the bonds of the county for the purpose of acquiring a site for a municipal hall and the erection of such municipal hall, the question shall be submitted at the next general election or at a special election called for that purpose: *Provided,* that the question shall be submitted at the June election, 1927, without further notice. The vote shall be by separate ballots to be furnished by the county." Section 3 provides that counties shall have the power to acquire by gift, purchase or condemnation the necessary property for the location of such municipal hall. It also provides: "Whenever a county owns land suitable for a site for such municipal hall, or owns land not needed for other county purposes; such land may be used for a site for such municipal hall or exchanged for other more suitable land for that purpose wherever any municipality within any such county owns or controls land within said county which the county board deems suitable for the location, op-

eration and maintenance of such municipal hall, such county and such municipality may arrange, and each is hereby fully authorized to arrange, for the location, operation and maintenance of such municipal hall upon such land, upon such terms and conditions as may be agreed upon between such municipality and such county."

The first question raised by appellant is whether the act violates section 13 of article 4 of the constitution, providing that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title contains two clauses. The first describes the act as one to enable counties to establish and maintain a municipal hall and to operate the same and to control or regulate the use thereof. This clause relates entirely to counties, and the powers conferred by an act within the scope of this clause are conferred only on counties. The second clause confers not only upon counties, but also upon any municipality within such county, the power to arrange, "upon such terms and conditions as they may agree upon, for the establishment, maintenance and operation of a municipal hall upon any land owned or controlled within such county by such municipality." Counsel for appellees contend that this does not mean that either the county, or a municipality within such county and the county, are empowered to establish, maintain and operate a municipal hall, but that it confers power only upon the county to establish and maintain a municipal hall, either independently of any agreement with any municipality as to the land to be occupied, or by joint agreement with the municipality within such county, to locate such municipal hall, to be built by the county, upon the land owned by the municipality; that the second clause of the title merely expresses the purpose to enable the county to acquire a site by negotiation with a municipality within the county. It is suggested that in order to do this it was proper, and possibly necessary, to authorize the municipality to make such arrangements with the county, for in the

absence of such provision the municipality could not enter into valid arrangements with the county.

In approaching the construction of the title of statutes the court is not at liberty to speculate on the intention of the legislature but is required to construe the words used according to their natural import. Courts are not privileged to import into the title of an act a condition or qualification not found there. To do so would amount to legislation by judicial construction. It is our duty to confine ourselves to the words of the legislature, nothing adding thereto, nothing diminishing. (*Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189; *State Board of Health* v. *Ross,* 191 id. 87; *Steere* v. *Brownell,* 124 id. 27; *Frye* v. *Chicago, Burlington and Quincy Railroad Co.* 73 id. 399.) The thing prohibited by the constitution is the passage of an act embracing more than one subject. Section 13 also requires that the subject of the act shall be expressed in the title. The title of an act not infrequently is made to express a general subject and a specification of details or particulars. If the particulars are incidental or germane to the general title or main purpose and show a furtherance of the one scheme or purpose of the act, the title is single and the act embracing the same general subject and particulars is valid. (*People* v. *Kramer,* 328 Ill. 512; *People* v. *Nelson,* 133 id. 565; *Ritchie* v. *People,* 155 id. 98; *Hronek* v. *People,* 134 id. 139.) This question cannot be determined by considering the title alone, but the body of the act must be looked to to determine whether but one purpose is included. If all the provisions of the act are fairly referable to one general scheme or purpose and that one purpose is expressed in the title the act is valid. (*People* v. *Kramer, supra;* 1 Sutherland on Stat. Const.—2d ed.—sec. 131; *VanHorn* v. *State,* 46 Neb. 62.) Where the act embraces two subjects but one of which is expressed in the title, only that part of the act not so expressed is invalid, but where two subjects are embraced both in the act and in the title the

entire act is void. (*Michaels* v. *Hill,* 328 Ill. 11 ; *Sutter* v. *People's Gas Light Co.* 284 id. 634.) It seems clear that the legislature in this act has attempted to do two things: First, to confer upon counties the power to establish municipal halls; and second, to authorize a county and a municipality in such county to do the same thing. These are expressed in the title. Both clauses confer power to establish, maintain and operate a municipal hall. The second clause cannot be construed, as urged by counsel for appellees, as conferring power to establish such hall by counties, only, unless there be imported into the title words not found there. Counties and municipalities, referred to in the title, though in some respects similar, are not the same. Counties are involuntary subdivisions of the State; cities and other municipalities are voluntary. To be germane the matters included in the title to an act must be "akin," "closely allied." Two things bearing resemblance to one another are not necessarily, in a legal sense, germane. (*Dolese* v. *Pierce,* 124 Ill. 140.) Under the first clause of the title counties are given every power necessary to establish, maintain and operate municipal halls; under the second clause the same power is given to two entities. We cannot agree with counsel for appellees that the language of the second clause can be construed as conferring power on the county only to establish, maintain and operate a municipal hall on land owned by a municipality within the county. The plain language of the second clause of the title does not warrant such construction. Appellees' construction would require that there be imported into the second clause the words, "by the county." That, this court cannot do. The second clause confers a right upon municipalities which counsel concede they did not before possess under the law. If such additional power be not conferred by the first clause but is a new power conferred on a different entity, the clause conferring it can hardly be said to be germane to the purpose expressed in the first clause. Since the plain language of

the second clause of the title confers the same power upon two entities as is conferred upon one by the first clause, it can scarcely be said that the provisions of the second clause are a part and a furtherance of the one general scheme or purpose set out in the first clause.

Counsel urge that an examination of the provisions of the act will disclose that power to establish a municipal hall was intended to be lodged in but one place, and that in the county. Attention is called to section 3, hereinbefore quoted, as showing that there is but one purpose embraced in the act. Appellant's counsel argue that two purposes are disclosed by this section: It provides that counties may have power to acquire lands or exchange lands not needed for other purposes for land more suitable for that purpose; and also provides that whenever any municipality within the county owns or controls land deemed by the county board suitable for such hall, the municipality and the county are by the act authorized to arrange for the location, operation and maintenance of such municipal hall upon such land. Counsel for appellees urge that the entire language hereinbefore quoted should be read as one sentence, as printed, while appellant's counsel argue that to make the language intelligible a period must be placed between the phrase "more suitable land for that purpose" and the word "whenever." Regardless, however, of the punctuation of the language, the section authorizes the municipality to agree concerning the location, operation and maintenance of a hall, which counsel concede is a power not otherwise possessed. The language of the act does not limit the agreement to one for the maintenance and operation of the hall as county property. If it were contemplated that the hall, when built, should be a county building, no agreement with the municipality for its maintenance or operation would be either necessary or proper. The language plainly indicates that the building, when built, is to be, if it be so agreed, maintained and operated jointly as the joint property of the county

and such municipality. Such purpose entirely accords with the second clause of the title but is a purpose separate from that expressed in the first clause. Every reasonable presumption should be indulged in favor of the validity of the act, giving to the general words in the title paramount weight; (1 Sutherland on Stat. Const.—2d ed.—sec. 127; *Steele* v. *Board of Control*, 85 Minn. 165, 88 N. W. 533;) but the title and the act show two subjects, and we are required to hold the act invalid *in toto*, since it is impossible to preserve one subject in the act while the other falls. *Ritchie* v. *People, supra; Michaels* v. *Hill, supra;* Cooley's Const. Lim.—5th ed.—p. 178; 1 Sutherland on Stat. Const.—2d ed.—sec. 144.

Another objection requiring consideration is, that the act does not provide for sufficient legal notice of the time and place of holding the election on the proposition for bonds and a tax to render that election valid. Appellees contend that the provision of the act requiring that the election be held at the June election, 1927, constituted sufficient notice; that by general law the voters of the county were apprised of the fact that the judicial election of 1927 would be held on June 6. It is pointed out that while no other notice was given, the newspapers of the city of Chicago of general circulation throughout the county of Cook contained news items concerning the election. In support of the position that the act was sufficient notice, counsel cite cases of this court holding that where the general law fixes the time and place of an election a defect in notice will not vitiate the election, the authority for the election being derived from the law and not from the notice. Cases cited to this point are *People* v. *Czarnecki*, 312 Ill. 271, *Roberts* v. *Eyman*, 304 id. 413, and *People* v. *Gary*, 196 id. 310. These cases, other than *Roberts* v. *Eyman*, refer to elections where the time and place of holding the same are fixed by general statute. In *Roberts* v. *Eyman* the election there considered was a special election, and this court held that

since there was no general law providing for it and fixing
the time when it should be held, the election held without
sufficient notice was void and the legislature did not have
power to validate, by a later act, the bonds ·issued under
authority of such election. The election in this case was a
special election. While the act provided that it should be
held at the time of the general election held in June, 1927,
such provision cannot be considered a general law relating
to elections but a special act relating to a particular election
to be held at the time of another election. The act not
only authorized such an election but directed that it be so
held. This provision can relate to no election to be held
at any other time. When the date for holding the June,
1927, election passed, the provision became of no effect. It
is difficult to conceive of an act more definitely calling for
a special election. The mere fact that this election was
provided by public law did not make it a general election.
Even though the judicial election held in June was a gen-
eral election, the election on this proposition was special,
and the fact that it was held on the day of a general elec-
tion does not change its character in this respect. (*People
v. Czarnecki, supra; Roberts* v. *Eyman, supra.*) Nor does
the fact that the newspapers carried news items of this elec-
tion during the five days between June 1, when the law
went into effect, and June 6, when the election took place,
aid in affording notice. Where notice is required, as held
in *Roberts* v. *Eyman, supra,* only legal notice is contem-
plated. The rule that the voter has constructive notice of
all elections provided by general law is based on the prin-
ciple that one may be charged with knowledge of those
things which he should know. The notice to the voter in
such case is constructive rather than actual notice, as actual
notice does not exist unless it is directly and personally
given to the party to be notified. (*Jordan* v. *Pollock,* 14 Ga.
145; *French* v. *Loyal Co.* 5 Leigh, (Va.) 627; *Merrill* v.
*Pacific Transfer Co.* 131 Cal. 582; *McCray* v. *Clark,* 82 Pa.

St. 457.) Notice is constructive when a party by circumstances is put upon inquiry and must be presumed to have had notice or by judgment of law is held to have had notice. (*Jordan* v. *Pollock, supra.*) The election in this case was for the purpose of securing authority from the voters of the county to levy a tax to pay for the bonds in excess of the constitutional limitation. The provision of the constitution that such increased tax can be authorized only by vote of the people contemplates that the people have reasonable notice that such a proposition is to be submitted. (*People* v. *Missouri Pacific Railroad Co.* 328 Ill. 504; *People* v. *Cairo and Thebes Railroad Co.* 319 id. 118.) It can scarcely be said that the submission of so important a matter to a vote of the people five days after the enactment and approval of a law authorizing such bonds and submission, which act provides that no other notice shall be given, constitutes sufficient notice of such election. As a matter of practical result, thousands of the voters of Cook county could not have known in so short a time that such a proposition was to be submitted. The principle of constructive notice must, if it is to be applied, find a practical basis in the fact that one may know the thing concerning which he is to be charged with notice. To procure a vote of the people of the county for the increase of taxes above the constitutional limit, as that matter is provided in the constitution, there must be reasonable notice to the voters of the submission of the proposition and a vote in favor of that proposition by a majority of the voters voting at the election. (*People* v. *Missouri Pacific Railroad Co. supra.*) While in this case it does not appear whether the vote cast in favor of the additional tax was a majority of all votes cast at the election at which the proposition was submitted, it is clear that the act did not afford that reasonable notice contemplated by the constitution and was not sufficient to apprise the voters of Cook county of such submission. Under such circumstances it seems probable that many voters

declined to vote on the proposition at all because they did not understand it and had no notice of it.

For the reasons herein given we are of the opinion that the court erred in dismissing the bill for want of equity. The decree of the circuit court is therefore reversed and the cause remanded, with directions to grant the relief prayed in the bill.

*Reversed and remanded, with directions.*