(No. 19872.—

THE PEOPLE *ex rel.* Abraham Marcus, Appellant, *vs.* JOHN A. SWANSON, State's Attorney, Appellee.

*Opinion filed June 20, 1930.*

DUNN, C. J., and FARMER, J., dissenting.

Cohon & Goldstein, for appellant.

John A. Swanson, State's Attorney, *pro se,* (Edward E. Wilson, John Holman, and Albert C. DeWitt, of counsel,) for appellee.

Francis X. Busch, John Lyle Vette, J. Scott Matthews, Sherman C. Spitzer, Christopher G. Kinney, and Hayden N. Bell, for *amici curiæ.*

Mr. Justice Stone delivered the opinion of the court:

Appellant filed in the circuit court of Cook county a petition for writ of *mandamus* against appellee, as State's attorney of Cook county, seeking to require him to accept a compromise settlement of a judgment entered on *scire facias* against appellant as surety on a bail bond in the sum of $5000 and to satisfy said judgment. The petition alleges that appellant settled and compromised the judgment against him with the board of commissioners of Cook county, whereby the board agreed to accept $100 in payment in full of the judgment and agreed to release the real estate of appellant, and that he tendered to appellee, as State's attorney, the said sum of $100, together with a certified copy of the resolution of the county board, and demanded that appellee execute and deliver to appellant a good and sufficient satisfaction of judgment entered against him, but appellee refused so to do. The petition also alleges that under section 17*b* of division 3 of "An act to revise the law in relation to criminal jurisprudence," approved March 27, 1874, as amended in 1929, the county board of Cook county was authorized to make such compromise settlement with appellant, and appellee, as State's attorney, is required, under that section, to execute. a good and sufficient satisfaction of the judgment. Appellee filed a demurrer to the petition, setting forth that said section 17*b* is unconstitutional and

void, in that it contravenes section 23 of article 4 of the constitution, denying to the General Assembly the power to release or extinguish, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State or to any municipal corporation therein. It is also alleged as a ground for demurrer that section 17b is in violation of section 13 of article 4 of the constitution, which provides that no act of the legislature shall embrace more than one subject and that shall be expressed in the title. It is also urged as a ground for demurrer that this section is in violation of article 3 of the constitution, in that it confers judicial power on the county board. The demurrer was sustained and the writ denied. Appellant argues here that the act is not open to the constitutional objections urged, and that it was therefore error on the part of the circuit court to sustain the demurrer.

Section 17b of division 3 of the Criminal Code is as follows: "The board of county commissioners or the board of supervisors of the respective counties in which judgments are entered in pursuance of section 17 of this act, acting for and on behalf of their respective counties, shall have the right at any time to compromise any such judgment or part thereof, and in case of such compromise the State's attorney shall at the direction of said board of county commissioners or board of supervisors, release and satisfy such judgments by releases or satisfaction to be signed by him; and in cases where there has been an execution, levy and sale of the property scheduled under a judgment on a forfeited recognizance or bond, at which sale the county itself has been the purchaser, such county may compromise its claim and direct the State's attorney to assign and deliver said certificate of sale or cancel and surrender the same to the person with whom such compromise is made." (Laws of 1929, p. 353.)

This section is one of five added in 1929 by amendment to division 3 of the Criminal Code, which amendment pro-

vides certain proceedings on the forfeiture of a recognizance or bail bond and the disposition of the judgment entered on *scire facias* on such forfeiture. In support of the validity of this section counsel for appellant urge first that a judgment on a forfeited recognizance or bail bond is not "an indebtedness, liability or obligation" to the State or a municipality within the meaning of section 23 of article 4 of the constitution; that the proceeds of such judgments are not revenue of the State but under the statutes are emoluments of the State's attorney or sums accruing to the school fund of the county in which such judgment is recovered. It is pointed out that the constitution nowhere provides that judgments on forfeited recognizances or bail bonds shall accrue or be paid to the State.

Under section 4 of the act in relation to Attorney General and State's attorneys (Smith's Stat. 1929, p. 1479,) the salary of the latter official, except as to that part which is to be paid out of the State treasury, shall be paid out of the county treasury of the county in which the State's attorney resides, on order of the county board. It is also provided "that the fees which are now, or may hereafter, be provided by law to be paid by the defendant or defendants, as State's attorney's fees, shall be taxed as costs and all fees, fines, forfeitures and penalties shall be collected by the State's attorney, and shall be paid by him direct into the county treasury. Which said fund shall be held as a special fund to be paid out and distributed as follows: Out of said fund the salaries of the State's attorneys and all assistant State's attorneys shall be paid, or so much thereof as said fund will meet, the balance of said salaries, if any, to be paid by said county as herein otherwise provided: And, further, provided, that on July 1 of each year, the county treasurer shall, if there remain in said fund after paying said salaries then due and lawful employees of said State's attorney's office and other legal expenses, of said State's attorney's office, and retaining a sum sufficient to

pay one quarterly payment of said salaries, and balance, pay over said balance to the county superintendent of schools of said county to be by him turned into and to become a part of the distributable school fund of said county, to be by said county superintendent distributed as now provided by law in relation to said distributable school fund. The county treasurer shall receipt therefor."

It is noteworthy that nowhere does the constitution in its provisions for that officer designate how he shall be paid, except that he shall receive such compensation as is or may be provided by law. Under section 25 of article 6 of the constitution it is provided that the State's attorney of Cook county shall receive the same salary, payable out of the State treasury, as is or may be paid from that treasury to other State's attorneys of the State, and further compensation to be paid by the county of Cook as is or may be provided by law. Section 12 of article 10 of the constitution provides that the General Assembly shall by general law, uniform in its operation, provide for and regulate the fees of county officers so as to reduce the same to a reasonable compensation for services actually rendered. There is therefore in the constitution no inhibition against the provision of section 4 of the act relating to the Attorney General and State's attorneys. By that section all fees, fines, forfeitures and penalties are to be put into a special fund in the county treasury, to be used to pay the salary of the State's attorney and his assistants in so far as the same may do so, and any balance remaining on July 1 of each year shall be paid over to the county superintendent of schools for distribution to the schools of the county. There is nothing in the constitution to indicate a purpose of that instrument that moneys collected from judgments on recognizances and bail bonds shall be paid into the State treasury or in any way become obligations due the State. The legislature is required to so regulate the fees of county officials that such fees shall be a reasonable compensation

for such officials. This provision of the constitution clearly implies that such fees shall be used for the purpose of such compensation and plainly negatives any interest of the State therein. Therefore, when the legislature provided that fines and forfeitures shall be collected by the State's attorney and paid into the county treasury, there to be held as a special fund to pay the compensation of the State's attorney, and the balance, if any, to be paid to the county superintendent of schools for distribution, such a disposition of those funds is in direct accord with the purpose of the constitution. This is shown by the debates in the constitutional convention of 1870 concerning section 12 of article 10. (Const. Debates, pp. 1343, 1344, 1353.)

In *People* v. *Farmers State and Savings Bank,* 338 Ill. 134, it was held that the State does not have such an interest in funds of a county or school district, though derived from taxation, as to give the treasurer holding the same a right of preference thereto in case of failure of a bank in which such funds are deposited. That holding is based on the proposition that the State does not own the money. In *Galpin* v. *City of Chicago,* 269 Ill. 27, it was held that the interest of the State's attorney in fines and penalties collected by him is in the nature of a lien.

By section 23 of the Counties act the powers of the county are exercised by the county board. Section 17*a* of division 3 of the Criminal Code (Smith's Stat. 1929, p. 1053,) authorizes the county board to purchase property at judgment sale on bond foreclosures. The direct effect of the application of section 17*b* is not upon any obligation due the State but upon the special fund of the county which is to be used to pay the State's attorney's compensation, the balance, if any, to the school fund. If this special fund, by reason of the compromise of such judgment by the county, or for any other reason, be not sufficient to meet the salary list of the State's attorney's office, such salaries are to be paid by the county under section 4

of the act concerning the Attorney General and State's attorneys.

It is argued, however, that since the bonds run in the name of the people they are obligations due the State. This fact, however, does not make them obligations to the State. Such is the form of numerous bonds, such as administrators' bonds and others, in which, however, the State has no interest. The State, in the prosecution of the cases, does have an interest in requiring a bail bond, just as it has an interest in requiring a guardian's bond for protection of wards of the court, but it does not follow that the State for that reason has an interest in the judgment arising on such bond. There are many instances in the statutes of obligations, fines or forfeitures running in the name of the People of the State of Illinois, the proceeds of which are in nowise State funds and none of which are obligations to the State in the sense that the State is interested in such obligation or the funds arising from the maturity thereof. To hold that a judgment on a recognizance or bail bond may not, in any event, be satisfied for less than its face is by analogy to so hold as to an administrator's bond, for while there is a difference in the purposes for which the bonds are originally given, the State is no more interested in a judgment thereon as obligee when rendered in one case than in the other. There is no constitutional inhibition against an act which permits the county board to settle such judgments. While under the common law such a judgment was an obligation running to the Crown, the common law obtains in this State only when not changed by statute. The statutes of this State hereinbefore discussed or mentioned evidence a purpose to change the common law in this regard. The constitution does not forbid such a change and all legislative power not constitutionally prohibited rests in the legislature. By these acts the legislature has, in effect, declared that such judgments are not obligations due the State, and therefore said

section 17*b* does not attempt to release an obligation due the State.

Counsel for appellee also argue that this section is in contravention of article 3 of the constitution, providing for the separation of powers, for the reason that it takes over judicial functions of the court and interferes with the processes of the court; that the only purpose of such bonds is to secure the attendance of the accused on the sessions of court, which is a judicial function, and that the county board has no right to interfere with the functions of the court in that matter. By statute in England courts alone had power to release such a judgment, for the reason that it was considered an obligation due the Crown. Under the constitution and statutes of this State it is not so considered. While it is true that bonds are given in furtherance of the exercise of the jurisdiction of the court over one accused of crime, yet when that purpose is spent and a judgment is entered on the recognizance or bail bond the function of the court ceases, and unless the judgment be set aside under the conditions named in the statute the court has no more to do with the judgment entered therein than with any other judgment. The compromise of such a judgment is no more an interference with the courts than is the case of the compromise of any other money judgment. Section 17*b* gives to the county board the right to dispose of a property right in which the State has no concern.

It is also argued that section 17*b* is void as in violation of section 13 of article 4 of the constitution, requiring that no act of the legislature shall embrace more than one subject and that such subject shall be expressed in the title. This act, with its accompanying sections, was adopted in 1929 as a part of "An act to revise the law in relation to criminal jurisprudence." The title of an act is not required to be an index to the body of the act, but if it fairly indicates the general subject and reasonably covers all the provisions of the act, so that it will not tend to mislead the

General Assembly or the people, it is a sufficient compliance with section 13 of article 4 of the constitution. (*People* v. *Tallmadge,* 328 Ill. 210; *People* v. *Jabine,* 324 id. 55; *People* v. *Stacker,* 322 id. 232; *State* v. *Milauskas,* 318 id. 198.) If germane to the purpose shown by the title it is not in violation of that section of the constitution. (*Campe* v. *Cermak,* 330 Ill. 463; *People* v. *Kramer,* 328 id. 512; Sutherland on Stat. Const.—2d ed.—sec. 131.) The provisions complained of may be fairly said to be germane to the purposes set forth in the title of the act, which is to cover the field of criminal jurisprudence.

We are of the opinion that the act is not subject to the constitutional objections interposed and that the circuit court erred in sustaining appellee's demurrer to the petition.

The judgment of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

DUNN, C. J., and FARMER, J., dissenting.