**Eric E. Hall, Appellant, v. The County of Cook, Appellee.**

**Gen. No. 37,199.**

504

Heard in the first division of this court for the first district at the June term, 1933. Opinion filed April 30, 1934.

URBAN A. LAVERY, for appellant.

THOMAS J. COURTNEY, State's Attorney, for appellee; HAYDEN N. BELL, ROBERT S. CUSHMAN, LOUIS H. GEIMAN and JACOB SHAMBERG, Assistant State's Attorneys, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, bringing suit to recover fees amounting to $187,500, claimed to be due him as county architect of

Cook county, upon trial by the court suffered an adverse judgment, from which he appeals.

The action was originally in mandamus, but was subsequently changed to assumpsit.

The appeal was taken directly to the Supreme Court, which transferred the cause to this court on the ground that there was no question involved giving the Supreme Court jurisdiction of the appeal. (353 Ill. 477.)

Plaintiff says that, acting under the directions of the county board of Cook county, he prepared architectural plans for a proposed civic auditorium or municipal hall; that after he had prepared the preliminary plans the work was abandoned; that under the schedule of fees fixed by the annual ordinances of the county board he was entitled to compensation for preliminary plans at the rate of one and one-fourth per cent on the cost of the proposed building, which in this case was $15,000,000, and on this basis he was entitled to $187,500. Defendant answers that no appropriation was ever made to pay plaintiff for these services and hence it will be deemed that such services were performed gratuitously.

October 4, 1926, the county board of Cook county adopted a resolution reciting that as it had no auditorium in which could be held outstanding civic events, such as national political conventions, it was resolved that the president of the board be authorized to appoint a committee to study ways and means for bringing about the construction by the City of Chicago and the county of Cook, acting jointly, of a stadium or auditorium.

March 3, 1927, pursuant to this resolution, President Anton J. Cermak appointed a committee of more than 200 persons, which became known as The Civic Auditorium Commission of Cook county; in July, 1927, enabling acts of the general assembly were duly approved and became laws; these gave power to the county of Cook to build and finance the proposed civic audito-

rium, to be located on land of the City of Chicago, and to maintain and operate the auditorium jointly with the city; the auditorium to be financed from the proceeds of a bond issue of $15,000,000, to be submitted to vote of the People at the June election of 1927; the proposition was submitted at this election of June 6, 1927, and carried, and shortly thereafter, on June 15th, the county board adopted a resolution authorizing and directing the issuance of $15,000,000 of "Municipal Hall Bonds" to "be issued from time to time as needed to pay for the erection of a municipal hall and the purchase of a site therefor in said county"; on the same date, June 15th, the county board also adopted a resolution directing the county architect (the plaintiff) to proceed with the analysis of plans of existing outstanding auditoriums for study by one of the subcommittees of the Civic Auditorium Commission; the resolution also provided that a committee of eight should be appointed, one of which was to be the county architect, to survey outstanding convention halls, and that the expense entailed in such work of the county architect and the committee should be paid out of the $15,000,000 municipal hall bond issue.

August 10, 1927, the county board adopted a resolution reporting the consent of a number of leading architects and engineers to act as associates with plaintiff, the county architect, in an effort to bring to Cook county the best civic hall that could be devised. The resolution concludes:

"Now, Therefore Be It Ordered by the Board of County Commissioners that the County Architect Eric E. Hall, be and he is hereby instructed to proceed with his said associate architects to take the necessary steps and make the necessary preliminary sketches, as architect for the Civic Auditorium building in association and with the suggestions and aid of the said associate architects aforementioned."

Pursuant to this resolution the plaintiff surveyed some five outstanding civic auditoriums in the United States and made drawings and sketches of these various auditoriums; later plaintiff was instructed by the county board to prepare definite plans and sketches for the proposed municipal hall. The evidence shows that plaintiff did a very large amount of work in preparing and drafting the preliminary plans, involving a considerable outlay of money on his part for rental of office space and for the services of his assistants. Defendant does not question the amount of the work performed nor the value of the services rendered, but stands squarely upon the legal proposition that there was no appropriation made to pay for these services, hence plaintiff cannot recover compensation.

February 29, 1928, the county board adopted the annual appropriation bill, which contains a series of lump sum appropriations, among them an appropriation of $15,000,000 for the municipal hall, which plaintiff says includes compensation for his services.

April 30, 1928, the plaintiff received notice from the chairman of the Civic Auditorium Commission that the Supreme Court of Illinois had held that the $15,000,000 bond issue authorized by the voters in the election of June 6, 1927, was invalid, whereupon plaintiff ceased to work on the plans.

June 9, 1932, plaintiff presented his claim to the county board for preparing preliminary studies and plans for the civic auditorium or municipal hall, at the rate of compensation for preliminary plans fixed by the board—that is, one and one-fourth per cent of the cost of the proposed $15,000,000 building, which would be $187,500; at a meeting of the county board the payment of the claim was denied, this suit followed, and upon trial in the circuit court it was held that plaintiff should take nothing.

Plaintiff's claim is based upon services rendered in the years 1926, 1927 and 1928. Defendant contends

that at no time did the county board in the annual appropriation ordinances make any appropriation to pay for the services of the plaintiff.

Subsec. 6 of par. 66, ch. 34, Illinois Statutes (Cahill) 1931, provides as follows:

"Said board of commissioners shall, within the first quarter of each fiscal year adopt a resolution, to be termed the annual appropriations bill, in and by which resolution said board shall appropriate such sums of money as may be necessary to defray all necessary expenses and liabilities of said Cook County, to be by said county paid or incurred during and until the time of the adoption of the next annual appropriation bill under this section . . . .

"After the adoption of such appropriation bill or resolution, the said board of commissioners shall not make any further or other appropriations prior to the adoption or passage of the next succeeding annual appropriation bill, and the said board of commissioners shall have no power, either directly or indirectly, to make any contract or to do any act which shall add to the county expenditure or liabilities in any year, anything or sum over and above the amount provided for in the annual appropriation bill for that fiscal year. . . . No contract shall hereafter be made, or expense or liability incurred by the said board of commissioners, or any member or committee thereof, or by any person or persons, for or in its behalf, notwithstanding the expenditure may have been ordered by the said board of commissioners, unless an appropriation therefor shall have been previously made by said board in manner aforesaid." This section also provides for penalties to be imposed on any member of the board who wilfully violates any of these provisions. Also, par. 436 of the Criminal Code, Cahill's St. ch. 38, provides for penalties for any public officer who shall be guilty of contracting for the expenditure

of a greater sum of money than may have been appropriated or authorized by law.

Courts have been strict in enforcing these statutory provisions. In *DeKam v. City of Streator*, 316 Ill. 123, an engineer drew plans for a sewer system for the City of Streator; a bill was filed to enjoin the city from paying for the work on the ground that no antecedent appropriation had been made for it; the injunction was granted, the court saying:

"A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin v. Osborne*, 39 Ill. 101; *Wells v. People*, 71 id. 532; *Board of Education v. Arnold*, 112 id. 11; *Penn v. Bornman*, 102 id. 523; *Cincinnati Mutual Health Assurance Co. v. Rosenthal*, 55 id. 85; *Borough of Milford v. Milford Water Co.*, 124 Pa. 610; *Berka v. Woodward*, 125 Cal. 119; *Levison v. Boaz*, 150 id. 185.)"

The general statement that, where no appropriation to pay for work has been made it is impossible for officials to create a liability against the municipality for that work, has been repeated in a number of cases. *May v. City of Chicago*, 222 Ill. 595; *Gathemann v. City of Chicago*, 263 Ill. 292; *Avery v. City of Chicago*, 345 Ill. 640. The trend of these and other cases supports the contention that no county expenditure can be incurred or made without an appropriation previously made in the annual appropriation bill.

It is pointed out that for nearly 40 years no appropriation has been made to pay the county architect for his services prior to the date they are performed, for the reason that as his compensation is upon a percentage basis it cannot be known what this will be until after the buildings are constructed and their cost determined, from which the architect's compensation is to be computed. It is not necessary to determine the

validity of such appropriations, for the question is, Was there ever at any time an appropriation made to cover the services in question?

Plaintiff's counsel contends that there was an appropriation made in the annual appropriation bill of February 29, 1928, of $15,000,000 for the municipal hall building, which included plaintiff's fees. This is as follows:

"Municipal Hall Bond Fund, Series 'X'—
 Being proceeds of an authorized bond
 issue for the purpose of acquiring a
 site and erecting a Municipal Hall
 in and for the County of Cook, Illi-
 nois, authorized at an election held
 June 6, 1927, pursuant to law
 (called Special Income Fund 'R'
 for identification and reference)..$15,000,000"

Defendant argues that the appropriation is too general in its terms, citing *Siegel v. City of Belleville,* 349 Ill. 240; *People v. Cairo, V. & C. Ry. Co.,* 237 Ill. 312, and *People v. Bowman,* 253 Ill. 234, where appropriations in lump sums were condemned.

The conclusive reason why the appropriation of the proceeds of the $15,000,000 bond issue cannot support plaintiff's claim is the decision in *Campe v. Cermak,* 330 Ill. 463. In that case the election of June 6, 1927, approving the bond issue for the municipal hall was held to be void and the court directed the entry of a decree restraining the county board from issuing or selling bonds for the purpose of erecting a municipal hall. It was the decision in that case that caused the suspension of the work.

It is well established by many cases that when the courts declare a law void as unconstitutional, it is as if it had never been passed. It confers no rights, nor imposes duties, nor affords protection; "it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County,* 118 U. S.

425. To the same effect is *Board of Highway Com'rs v. Bloomington,* 253 Ill. 164. In *Mills v. Peoples Gas Light & Coke Co.,* 327 Ill. 508, the court said of an unconstitutional act that: "When a statute is adjudged to be unconstitutional, rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it. . . ." See also *People v. Schraeberg,* 347 Ill. 392; *City of Henderson v. Lieber's Executor,* 175 Ky. 15; and *State ex rel. Nuveen v. Greer,* 88 Fla. 249. In *Dement v. Rokker,* 126 Ill. 174, the court held that although the officials may have assumed certain contracts to be valid and have acted upon the faith of that assumption, yet if their legality is denied the question of the validity of the contracts was still open.

The decision in *Campe v. Cermak, supra,* nullified the vote of the People at the election of June 6, 1927, and all of the actions of the county board with reference to the bond issue. It should be noted that in no resolution or appropriation of the county board was there any reference to the general funds of the county. These in terms made an appropriation out of the "proceeds" of the bond issue authorized at the election of June 6, 1927. When such election was declared void all of the resolutions and appropriations based upon this election also became nullified. The trial court properly held that the attempted appropriation of $15,000,000 was void and of no effect.

Plaintiff argues that he is a public officer whose claim for compensation for services rendered needs no supporting appropriation.

Chap. 34, par. 66 (20), Illinois Statutes (Cahill) 1931, provides that the president of the board shall appoint a county architect, and on February 28, 1927, the board, by resolution established "the office, position or place of employment" of the county architect; the rate of compensation was fixed at six per cent of all work

under his supervision, to be divided one and one-fourth per cent for preliminary studies and sketches, three per cent for plans and specifications, and one and three-fourths per cent for supervising and superintending work.

In the same year, 1927, plaintiff was appointed to the position of county architect and has been so appointed each year to 1932 inclusive, and has been paid his compensation in accordance with the rate fixed in the resolution; each year he filed a bond in the sum of $50,000, conditioned upon his faithful discharge of the duties of the office of county architect.

Respective counsel have cited many cases which are supposed to furnish the answer to the question whether plaintiff was a public officer or an employee upon a commission basis. We do not deem it necessary to decide this question, for the reasons hereafter stated.

There is an impressive body of decisions which hold that even though plaintiff might be described as a public officer, the county has no authority to fix the compensation of a public officer on a percentage basis. Among the cases tending to support this are *Koons v. Richardson*, 227 Ill. App. 477; *Koons v. City of Mount Vernon*, 245 Ill. App. 165; *People v. Arnold Bros.*, 282 Ill. 305; *Fergus v. Russel*, 270 Ill. 304; *Foreman v. People*, 209 Ill. 567; *Coles County v. Messer*, 195 Ill. 540. In *McGovney v. Village of Melrose Park*, 145 Ill. App. 329, affirmed 241 Ill. 142, the village adopted an ordinance which, in addition to the salary of the village attorney, provided that in certain other classes of cases he should be allowed the usual and customary fees of attorneys in such cases above and besides the sum named as his salary; plaintiff sought to recover for these extra services. The reviewing court held he could not recover, on the ground that the statute provided that such fees or compensation should not be increased or diminished during the term of the officer, and that unless the compensation was fixed at a sum

certain it could not be told whether it has been increased or diminished. In *Koons v. Richardson,* 227 Ill. App. 477, the city was enjoined from paying the city engineer compensation on a percentage basis, the court holding that the statute required the city council to fix the compensation of city officers at a definite sum. The court said: "It will not do to fix it on a percentage basis or upon the basis of the usual and customary charges for such services. It must be fixed by ordinance and included in the annual appropriation ordinance. If not definitely fixed it could not be known how much should be raised by taxation for that purpose." A similar question was involved in *Koons v. City of Mount Vernon,* 245 Ill. App. 165. The court held against the claim for services based upon reasonable compensation, saying: "Both the annual appropriation bill and the tax levy ordinance are required to specify not only the objects for which appropriations are to be made, but also the amount appropriated for each purpose and if the ordinance shows that an uncertain amount is appropriated for some purpose it is invalid in that regard." Also to the same effect are *Fergus v. Russel,* 270 Ill. 304, and *People v. Arnold Bros.,* 282 Ill. 305.

A further consideration against plaintiff's claim is that even if he were an officer with compensation lawfully fixed on a percentage basis, he can recover no compensation unless an appropriation is made therefor. The statute above quoted, par. 66(6), ch. 34, which provides that no expense or liability shall be incurred by the board unless an appropriation therefor has been previously made, contains a proviso to the effect that it is not necessary for the county board to make an appropriation to provide for payment of any charge "upon said county imposed by law . . . including fixed salaries of officers required by law to be paid from the county treasury . . . and other charges fixed by law."

Defendant argues properly that the compensation of plaintiff does not come within this proviso; that his compensation is not required by law to be paid from the county treasury without action by the board. In *People v. Day,* 277 Ill. 543, it was held that the Cook county annual appropriation ordinance and all taxes based thereon were void because not legally published. The question then arose as to what claims came within the provision of the statute which required no appropriation by the county board. The court held that the general assembly had power to create charges upon the counties and to require their payment without action of the county authorities and had done so by the proviso above quoted; the court said:

"That proviso relates only to charges imposed upon the county by statute and required to be paid from the county treasury without action of the board of commissioners, either in fixing the amount of the charge or otherwise." The case was remanded with directions to ascertain what taxes were levied to pay charges imposed upon the county by statute and to disallow claims requiring an appropriation by the county board. Pursuant to this the county court disallowed certain items and its report came before the Supreme Court and was affirmed in *People v. Day,* 279 Ill. 148.

Plaintiff's compensation was not fixed by statute but by the county board. He clearly does not come within the proviso of the statute, and under the ruling in the *Day* case his claim should be disallowed.

Counsel for plaintiff argues persuasively that in any event plaintiff can recover compensation for services ordered by the county, which has had the benefit of such services, and that the county is liable because of a *quasi* contractual obligation upon it to pay for such services.

A leading case supporting this proposition is *Hitchcock v. Galveston,* 96 U. S. 341, where the plaintiff did

work on the sidewalks of the defendant. The court held that it mattered not that the promise to pay was in a manner not authorized by law, and that the defendant having received benefit at the expense of the other contracting party should pay for the same. There are a number of cases in this State of the same purport. *Maher v. City of Chicago,* 38 Ill. 266; *DeWolf v. City of Chicago,* 26 Ill. 443; *Westbrook v. Middlecoff,* 99 Ill. App. 327; *Drainage Com'rs v. Lewis,* 101 Ill. App. 150; *County of Coles v. Goehring,* 209 Ill. 142; *Chicago v. Pittsburg, C. C. & St. L. Ry. Co.,* 244 Ill. 220; *People v. Spring Lake Drainage & Levee Dist.,* 253 Ill. 479; *McGovern v. City of Chicago,* 281 Ill. 264; *Stripe v. Yager,* 348 Ill. 362.

In most of these cases the work resulted in something tangible, like widening a river, erecting a public building or digging a ditch. It is doubtful whether preliminary plans for a building which was never erected can be classified with the work involved in these cases. Some cases from other jurisdictions are cited where plaintiff was allowed compensation for preliminary plans and sketches, but the opinions in these cases are concerned more with the amount of the compensation to be allowed than with the question of liability, which is the question before us.

However, there are many Illinois cases in which are very strong expressions militating against plaintiff's theory of *quasi* contract. In *May v. City of Chicago,* 222 Ill. 595, it was held that no appropriation having been made for extra work no liability to pay for same could be created. In *DeKam v. City of Streator,* 316 Ill. 123, the court quoted with approval from *Coles County v. Messer,* 195 Ill. 540:

"The county cannot be made liable for any expenditure unless the county board has fixed a sum for expenses and the aggregate expenses are necessary and within the amount. The fact that nothing has

ever been fixed expressly for expenses does not authorize a recovery for expenses any more than the failure to fix compensation would authorize a recovery for reasonable compensation. If a county officer can recover from the county for expenses where no sum has been fixed or allowed for such expenses, he can recover any amount, within the fees collected, which he necessarily expends, and the provision of the constitution under which the board has the absolute power to fix and limit expenses would be nugatory and of no avail.''

In *Hope v. City of Alton,* 214 Ill. 102, where the plaintiff sought to recover for legal services rendered, the court held defendant not liable, saying: ''In other words, the proposition is that when a city gets what it had authority to get in some way, it should pay for what it gets, whether it exercised the power in the prescribed way or not. The obvious answer is, that this contract was prohibited by a valid ordinance, and that the city council had no right to make it in some other way or by some other method.''

In *Roemheld v. City of Chicago,* 231 Ill. 467, the court said the fact that the labor is beneficial will not create a liability. To the same effect are *Duck Island Hunting & Fishing Club v. Gillen Dock, Dredge & Construction Co.,* 330 Ill. 121, *Gathemann v. City of Chicago,* 263 Ill. 292, and *Avery v. City of Chicago,* 345 Ill. 640. In commenting upon the difference between the obligation of private and public corporations, the court said in *Bradley v. Ballard,* 55 Ill. 413: ''But municipal corporations stand upon a different ground. They are not organized for gain, but for the purpose of government, and debts illegally contracted by their officers cannot be made binding upon taxpayers, from the presumed assent of the latter.'' Following these decisions, last cited, we hold that plaintiff cannot recover upon the basis of a *quasi* contract.

''Whenever, as here, considerable service of a highly skillful nature over a protracted period of time has

been rendered at the request of a public corporation without a previous anticipatory and supporting appropriation it may seem to be a great hardship to hold that assumpsit will not lie; but the legislature has made the law apparently based on a wise public policy and the court is bound thereby." (Judge Taylor's opinion in the instant case.)

We have not attempted to comment upon all of the points made in the well written brief of counsel for plaintiff, and have referred to only a few of the cases cited by him. We have attempted to confine ourselves to the affirmative reasons leading to our conclusion.

For the reasons indicated above the judgment of the circuit court is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.